IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WANDA TUBBS,                        )
                                    )
            Plaintiff,              )          NO. 3:20-cv-00477
                                    )
v.                                  )          JUDGE RICHARDSON
                                    )
JEFF LONG, et al.,                  )
                                    )
            Defendants.             )
                                    )

## **MEMORANDUM OPINION**

Pending before the Court is a motion to dismiss filed by Defendants Jeff Long and the State

of Tennessee ("State Defendants"). (Doc. No. 19, "Motion to Dismiss"). Also pending before the

Court is a purported motion for judgment on the pleadings filed by Defendants Darryl Young,

Brandon Gullett, Brandon King, and Cannon County, Tennessee ("County Defendants"). (Doc.

No. 33, "County Defendants' Motion"). Plaintiff responded to both Motions. (Doc. Nos. 27 and

35). Each set of Defendants replied separately. (Doc. Nos. 28 and 37). The motions are ripe for

review.

For the reasons discussed herein, the Court will grant the Motion to Dismiss and will deny

the County Defendants' Motion.

## **BACKGROUND**[1]

On May 3, 2017, Sheriff's Deputy Brandon King visited the residence of Terrance Martin

to serve Martin a civil paper related to child support. (Doc. No. 1 at 3). Terrance Martin is the son

---

[1] Except as indicated otherwise, the facts set forth herein are alleged in Plaintiff's Complaint (Doc.
No. 1) and are accepted as true for purposes of the Motions.

of Plaintiff Wanda Tubbs. (*Id.*). He rented the residence from Plaintiff and lived there with his girlfriend, Shaundra Smith. (*Id.*). When Deputy King returned to the Sheriff's Headquarters that day, he reported to Investigator Brandon Gullett ("Gullett") that the home smelled strongly of marijuana. (*Id*). In response, Investigator Gullett sought (and, the Complaint implies, clearly obtained) a search warrant for the property based on the smell. (*Id*). In his affidavit in support of his request for a search warrant, Gullett included the averment that three months earlier he had uncovered a "large amount" of marijuana in the home. (*Id.* at 4).

On May 4, 2017, Gullett and Sheriff Darryl Young executed the search warrant at the residence with the help of other officers. (*Id.*). Inside the residence, they found various illegal drugs including prescription medication,[2] cocaine, and a small amount of marijuana. (*Id.*). Prior to the search, Plaintiff had left her Michael Kors® purse, containing her "life savings," inside the home. (*Id.* at 5). Plaintiff claims that the purse contained between $95,000-$97,000, though official figures from the police counted $93,740. (*Id.*). Police seized the purse and money, along with three other containers of money presumed to be drug proceeds. (*Id.*). The government sought a forfeiture warrant on the grounds that the money constituted proceeds traceable to a violation of the Tennessee Drug Control Act.[3] The money in the three other seized containers was forfeited by Martin and Smith as a part of their plea deals. (*Id.* at 6). Plaintiff, however, filed a claim with the

---

[2] The Complaint does not say what made the prescription drugs illegal; one surmises that it must have had something to do with them being possessed by someone other than a patient for whom they were validly prescribed by a physician.

[3] Plaintiff does not allege this fact in her Complaint, but it is stated in the state court decision Plaintiff references throughout her Complaint. *See Tubbs v. Long*, 610 S.W.3d 1, 3 (Tenn. Ct. App. 2020) ("Officers seized all currency and sought a forfeiture warrant on the grounds that the money constituted proceeds considered traceable to a violation of the Tennessee Drug Control Act."). The reliability of this source as to this fact cannot reasonably be questioned, and so the Court can and does take judicial notice of this fact.

Tennessee Department of Safety ("Department") for the return of the purse and the money therein. (*Id.*).

On January 30, 2018, the Department held a hearing on Plaintiff's claim. (*Id.*). Plaintiff attempted to file a motion to suppress all evidence gleaned from "the unlawful search" of the residence.[4] (*Id.*). In response, the Department argued that Plaintiff had no Fourth Amendment standing to challenge the search,[5] as she did not live at the property and was merely a landlord. (*Id.* at 7). The administrative judge in charge of the hearing denied the motion to suppress, and ultimately determined that Plaintiff was not "credible" and that the money/purse did not belong to her. (*Id.* at 8-9).

Plaintiff then petitioned the Circuit Court for Davidson County for review of the order. (*Id.* at 9). The Circuit Judge deferred to the agency and refused to overturn the result. (*Id.*). Plaintiff appealed that ruling to the Tennessee Court of Appeals, which affirmed the Circuit Judge on April 28, 2020. (*Id.* at 9-10). In its decision, the Court of Appeals found that Plaintiff was barred by state law from asserting a claim in a forfeiture proceeding unless she could first prove by a

_____

[4] In her motion, Plaintiff argued the search warrant was invalid because "the police fabricated the strong odor of fresh marijuana as described in the affidavit, and also fabricated having recovered a large amount of marijuana from the house previously." (Doc. No. 1 at 6).

[5] Importantly, the term "Fourth Amendment standing" is distinguishable from Article III standing. That is, it has nothing to do with a party having a cognizable "case or controversy" (within the meaning of Article III) to confer subject-matter jurisdiction on a federal court, but rather is a shorthand term used to mean that the party having such "standing" has a sufficient interest in property to have a cognizable substantive claim regarding any alleged government invasion related to that property. In other words, "[i]n the Fourth Amendment context, 'standing' is 'a useful shorthand' for the requirement 'that a person must have a cognizable Fourth Amendment interest in the place searched' in order to challenge a search as unconstitutional. Unlike the Article III doctrine that shares its name, Fourth Amendment 'standing' is not jurisdictional[.]" *United States v. Calhoun*, 834 F. App'x 128, 131 (6th Cir. 2020) (quoting *Byrd v. United States*, —— U.S. ——, 138 S. Ct. 1518, 1530 (2018)). So a decision about a person's Fourth Amendment "standing" is a decision about their interest in the property implicated in the Fourth Amendment issue at hand.

preponderance, *without* suppressing evidence, that the money was hers. (*Id.* at 10). Plaintiff sought a rehearing from the Tennessee Court of Appeals, but this request was denied.[6]

Plaintiff then filed the instant federal action. Therein, she asserts, against all Defendants, two claims arising under federal law, namely 42 U.S.C. § 1983 ("Section 1983") : Count I for deprivation of property and liberty without due process in violation of the Fourteenth Amendment; and Count II for taking without compensation in violation of the Fifth Amendment. Additionally, Plaintiff brings two state-law claims under Tennessee common law: Count III for trespass (against Defendants King and Gullett); and Count IV for conversion (against Defendants King, Gullett, and Young).

## LEGAL STANDARD

A. <u>State Defendants' motion to dismiss for lack of subject-matter jurisdiction</u>[7]

In the Motion to Dismiss, State Defendants actually make essentially three different and alternative motions to dismiss. One of these is a motion to dismiss Plaintiff's claims for a lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).

---

[6] This fact is not contained in Plaintiff's Complaint but is attached to State Defendants' Motion to Dismiss. (Doc. 20-2). Plaintiff's request for rehearing and the Tennessee Court of Appeal's denial of said request are public records, so the Court can rely on this information (the fact that the request was made and was denied) to provide contextual background.

[7] In addition to their Motion to Dismiss for lack of subject-matter jurisdiction based on *Rooker-Feldman*, State Defendants argue Plaintiff's claims should be dismissed based on sovereign immunity and for failure to state a claim upon which relief could be granted under 12(b)(6). The Court has chosen to consider the argument related to *Rooker-Feldman* and subject-matter jurisdiction first because, as noted herein, it is a threshold issue. *See Am. Telecom Co.*, 501 F.3d at 537. While sovereign immunity is "'jurisdictional in the sense that it is a limitation on the federal court's judicial power,' the defense 'is not coextensive with the limitations on judicial power in Article III.'" *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (quoting *Calderon v. Ashmus*, 523 U.S. 740, 745 n. 2 (1998)). Additionally, a 12(b)(6) motion, if successful, results in a dismissal with prejudice, and only a court who is confident it has jurisdiction

> A motion to dismiss brought under Rule 12(h)(3) is analyzed in the same manner as a motion to dismiss brought under Rule 12(b)(1). The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.

*Cohan v. MGM Hospitality, Inc.*, No. 20-cv-10981, 2021 WL 4478744, at *1 (E.D. Mich. Sept. 30, 2021) (citing to *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.3d 874, 879 n.3 (3d Cir. 1992)). The Court will thus utilize the standards for a Rule 12(b)(1) motion in evaluating State Defendants' 12(h)(3) motion to dismiss for lack of subject-matter jurisdiction. As noted, Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish federally-cognizable claims, jurisdiction exists. *Id.* A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.*

Where there is a factual attack on the subject-matter jurisdiction of the court under Fed. R. Civ. P. 12(b)(1), no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Gentek Bldg. Products, Inc.*, 491 F.3d at 330. "[T]he district court has considerable discretion in devising procedures for resolving questions going to subject

---

should dismiss any claims with prejudice. Thus, because the Court determines the *Rooker-Feldman* argument is dispositive, it need not set forth the legal standard for the other arguments.

matter jurisdiction[.]" *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990).

The Sixth Circuit has noted that:

> The factual attack, however, differs greatly [from a facial attack] for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)). Notably, "the fact that the court takes evidence for the purpose of deciding the jurisdictional issue does not mean that factual findings are therefore binding in future proceedings." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts.[8] *Gentek Bldg. Products, Inc.*, 491 F.3d at 330; *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."). As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction. *Global Technology, Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015); *Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005).

---

[8] Neither party has requested an evidentiary hearing nor pointed the Court to additional evidence that they might submit at such a hearing. The Court therefore exercises its discretion to rule on the present Motion without an evidentiary hearing. *See e.g.*, *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990).

State Defendants argue the Court lacks jurisdiction due to the *Rooker-Feldman* doctrine. A challenge to subject-matter jurisdiction pursuant to *Rooker-Feldman* can be either a facial or factual attack. *See Larry E. Parish, P.C. v. Bennett*, 3:20-cv-00275, 2021 WL 3895187, *2 (M.D. Tenn. July 10, 2020) (finding an attack on subject-matter jurisdiction based on *Rooker-Feldman* was a facial attack inasmuch as it focused only on the sufficiency of the pleadings); *Kings v. CitiMortgage, Inc.*, No. 2:10-cv-01044, 2011 WL 2970915, *5 (S.D. Ohio July 20, 2011) ("The Court will construe the challenge here as a facial attack. The *Rooker–Feldman* abstention argument springs from the complaint itself."); *Gilleylen v. Supreme Ct. Clerk Davis*, No. 1:05-CV-271, 2005 WL 2899469, at *1 (W.D. Mich. Oct. 31, 2005) ("The Defendant has presented a factual attack on the court's subject matter jurisdiction based upon the *Rooker-Feldman* doctrine.").

Because the success or failure of State Defendants' 12(b)(1) challenge hinges on factual matters outside of the Complaint—particularly the contents and circumstances of the state court proceedings that preceded this action—the present challenge is a factual attack. Therefore, the Court will exercise its discretion to resolve the Motion to Dismiss by reference to the record outside of Plaintiff's Complaint.

B. <u>County Defendants' motion for judgment on the pleadings</u>

County Defendants have filed what they have styled as motion for judgment on the pleadings pursuant to Rule 12(c). Rule 12(c) provides that after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). There are multiple problems with County Defendants' Motion. First, the pleadings have closed as to only County Defendants, who have filed an answer. Defendant Jeff Long and Defendant State of Tennessee have filed no answer. Accordingly, a 12(c) motion is premature. When there are "multiple defendants, all defendants must file an answer before a Rule 12(c) motion

can be filed." *Horen v. Board of Educ. of Toledo City School Dist.*, 594 F.Supp.2d 833, 840 (N.D. Ohio 2009).[9]

Second, County Defendants' motion simply is not in substance a Rule 12(c) motion— motion for judgment on the pleadings—anyway. "A motion for judgment on the pleadings essentially constitutes a delayed [*i.e.*, post-answer] motion under Rule 12(b)(6) and is evaluated under the same standard." *Brack v. Budish*, 539 F. Supp. 3d 794, 798 (N.D. Ohio 2021) (citing *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021), and *Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016)); *Stewart v. King*, No. 3:09-0021, 2010 WL 883737, at *3 (M.D. Tenn. Mar. 5, 2010) ("A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed under essentially the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6), that is, the motion should not be granted unless, taking all of the plaintiff's well-pleaded material allegations as true, the defendant is nevertheless 'clearly entitled' to judgment." (quoting *Fritz v. Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)). But after acknowledging this, County Defendants' Motion set forth no argument related to the applicable 12(b)(6) standard, but instead asserted that the Court lacks subject-matter jurisdiction over this case pursuant to Rule 12(h)(3). For that reason, the Court will treat County Defendants' Motion as if it was brought pursuant to 12(h)(3) and will apply the standard for a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction as discussed above.

---

[9] True, the Court would have discretion to treat a premature 12(c) motion as a Rule 12(b)(6) motion. *See Armatas v. Aultman Health Found.*, No. 5:19-CV-00349, 2019 WL 8754869, at *3 (N.D. Ohio Dec. 19, 2019), *report and recommendation adopted*, No. 5:19CV349, 2020 WL 1650841 (N.D. Ohio Mar. 27, 2020) (collecting cases). But the Court declines to do so because, as noted herein, County Defendants' Motion is not in substance a Rule 12(b)(6) motion and because, in light of the Court's resolution of the Motion to Dismiss, County Defendants' Motion is moot anyway.

**DISCUSSION**

A.  Whether the *Rooker-Feldman* doctrine bars the Court from considering Counts I and II of Plaintiff's Complaint

In their Motion to Dismiss, State Defendants argue the Court lacks subject-matter jurisdiction over Plaintiff's claims because Counts I and II of the Complaint are "barred by the *Rooker-Feldman* doctrine." (Doc. No. 20 at 8). County Defendants bring an identical argument in their Motion.[10] (Doc. No. 34 at 4). The *Rooker-Feldman* doctrine originates from two Supreme Court cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)—which held that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (quoting *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002)). Under *Rooker-Feldman*, federal courts should not hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). A complaint that "essentially invite[s] federal courts of first instance to review and reverse unfavorable state-court judgments" should be "dismissed for want of subject-matter jurisdiction." *Id.* at 283–84. That is because "appellate jurisdiction to reverse or modify a state-court judgment is lodged…exclusively in" the United States Supreme Court—not a federal district court. *Id.* at 283 (citations omitted).

The State Defendants and County Defendants contend that Counts I and II of Plaintiff's Complaint request the Court to review the decision of a state court and are thus barred by *Rooker-Feldman*. Plaintiff argues a variety of reasons why *Rooker-Feldman* does not apply to her claims.

---

[10] In fact, County Defendants appear to have copied verbatim the portion of State Defendants' Motion to Dismiss which discusses *Rooker-Feldman*.

In her Complaint, Plaintiff preemptively argues that *Rooker-Feldman* will not bar her claims because she is not challenging a state court ruling, but is in fact "faulting these Defendants for seizing her property using a state-law procedure which violates the Fourteenth Amendment." (Doc. No. 1 at 15). In her response to State Defendants' Motion to Dismiss, Plaintiff argues that there are three reasons *Rooker-Feldman* does not bar her claims: 1) the present claims were never raised in state court; 2) the Sixth Circuit's rule of thumb is that *Rooker-Feldman* should only be used against federal plaintiffs who were state court defendants; and 3) her injury does not stem from the state court, but from the state government and its actors. (Doc. No. 27 at 2-3). Then, in her Response to County Defendants' Motion for Judgment on the Pleadings,[11] Plaintiff argues that *Rooker-Feldman* "expressly does not apply to agency decisions," which is what Plaintiff suggests her claims are challenging.

In the Court's interpretation of Plaintiff's multiple briefings on *Rooker-Feldman*, there are three main arguments Plaintiff is raising against application of *Rooker-Feldman*: 1) Plaintiff's current claims are different from the claims asserted in state court; 2) the Sixth Circuit "rule of thumb" bars the application of *Rooker-Feldman* in this case; and 3) the source of Plaintiff's injury is state actors and a state agency, not the state court.

Plaintiff's first two arguments are easily rejected. First, it does not matter that the present claims were not previously brought in state court. "The test is whether the plaintiff's injury stems from the state-court judgment, not whether the claims are identical." *RLR Investments, LLC v. City of Pigeon Forge, Tenn.*, 4 F.4th 380, 388 (6th Cir. 2021) (finding *Rooker-Feldman* was not

---

[11] As will be discussed later, the Court will deny County Defendants' Motion for Judgment on the Pleadings as moot. Nonetheless, to ensure that Plaintiff's position is fully heard, the Court has credited and considered Plaintiff's arguments related to *Rooker-Feldman* that were put forth in her response to the County Defendants' Motion.

inapplicable to plaintiff's Section 1983 claims merely because they were not a part of the plaintiff's previously filed state case). Second, Plaintiff's reliance on the Sixth Circuit "rule of thumb" is misplaced. Plaintiff states the rule of thumb as follows: "'[I]f the federal plaintiff was the plaintiff in state court, apply res judicata; if the federal plaintiff was the defendant in state court, apply *Rooker-Feldman*.'" (Doc. No. 27 at 6) (quoting *Hutcherson v. Lauderdale Cnty., Tenn.*, 326 F.3d 747, 755 (6th Cir. 2003)). However, Plaintiff fails to note that the *Hutcherson* Court also stated, "This distinction based upon state-court status as a plaintiff or defendant is a helpful shorthand, but . . . should not be understood as a per se rule." *Id.* The Court must instead examine the applicability of *Rooker-Feldman* under the particular circumstances involved here, and not merely rely blindly on the so-called rule of thumb. Therefore, this argument is without merit.

Plaintiff's third argument is the most persuasive. As noted, "the pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim 'is whether the source of the injury upon which plaintiff bases his [or her] federal claim is the state court judgment.'" *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (quoting *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008)). And "[t]he source of the plaintiff's injury may in turn be determined by examining the request for relief." *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018).

If the source of Plaintiff's injury is not actually the actions or decisions of a state court, then *Rooker-Feldman* does not apply to bar a federal court from hearing her claims. To identify the source of Plaintiff's alleged injury, the Court must review her Complaint.

1. Count I of Plaintiff's Complaint is barred by *Rooker-Feldman.*

Plaintiff's Count I reads, "By implementing a forfeiture via administrative procedure that barred the Plaintiff from suppressing evidence for Fourth Amendment violations,

COMMISSIONER JEFF LONG, the STATE OF TENNESSEE, and CANNON COUNTY, TENNESSEE deprived the Plaintiff of liberty and property without substantive or procedural due process in violation of the Fourteenth Amendment . . ." (Doc. No. 1 at 11). Count I continues, "As clarified by the Tennessee Court of Appeals, this unconstitutional law has been implemented by the final policymakers of Tennessee, namely the Tennessee General Assembly. As such, the STATE OF TENNESSEE is clearly liable." (*Id.* at 12).

It is not immediately clear to the Court what exactly Plaintiff is alleging in Count I, and as a result it is difficult to decipher the source of Plaintiff's alleged injury from the Section 1983 violation alleged in that count. As far as the Court can determine, there are three different theories that Plaintiff could be attempting to assert in Count I. The first possibility is that Plaintiff is not challenging the statute at all but is actually suggesting that the Defendants acted unconstitutionally and outside of the law when they seized her property. The second possibility is that Plaintiff is making a facial challenge to the constitutionality of the Tennessee statute governing forfeiture in cases like hers. The third possibility, and the one the Court finds most likely based on the substance of the Complaint, is that Plaintiff is making an as-applied challenge to the constitutionality of the Tennessee statute governing forfeiture in cases like Plaintiff's case.

If Count I is attempting to allege that the injury stems, not from the State courts' decisions nor from the statute itself, but from Defendants acting unconstitutionally by seizing Plaintiff's property and seeking forfeiture then *Rooker-Feldman* would be inapplicable here. However, if Plaintiff intended to allege this, she has failed to do so successfully. Plaintiff's Count I includes the following phrases: "[b]y implementing a forfeiture via administrative procedure" and "this unconstitutional law has been implemented . . ." (Doc. No. 1 at 11-12). Nowhere in Count I or in the preceding facts does Plaintiff allege that any of the Defendants acted outside the confines of

the applicable law; in fact, it seems quite clear that Plaintiff alleges the Defendants acted within the boundaries of the law, albeit an "unconstitutional law." Even construing the Complaint in the light most favorable to Plaintiff as required, the Court cannot conclude that Count I alleges factual matter (as would be required by *Iqbal* and *Twombly*) to plausibly suggest that Defendants engaged in unconstitutional conduct—and thereby injured Plaintiff—that was *outside* the boundaries of an otherwise constitutional law. Indeed, if this is what Plaintiff meant to allege, she needed to do so more plainly, since, after all, Rule 8 requires a "plain" statement of a plaintiff's claim. *See* Fed. R. Civ. P. 8(a).

As to the second possibility, if Plaintiff is making a facial challenge to the constitutionality of a Tennessee statute, *Rooker-Feldman* again would be inapplicable. The Sixth Circuit has previously explained that "[t]he *Rooker–Feldman* doctrine 'does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely a general [*i.e. facial*] challenge to the constitutionality of the state law applied in the state action, rather than a challenge to the law's application in a particular state case.'" *Carter v. Burns*, 524 F.3d 796, 798 (6th Cir. 2008) (quoting *Hood*, 341 F.3d at 597). In the Sixth Circuit, a facial constitutional challenge entails a claim that there are *no* circumstances under which the statute can be applied in a constitutional manner, such that the law must be relegated in its entirety to the proverbial ash bin of history:

> A facial challenge to a law's constitutionality is an effort "to invalidate the law in each of its applications, to take the law off the books completely." *Connection Distrib. Co. v. Holder,* 557 F.3d 321, 335 (6th Cir.2009) (en banc); *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, n. 5, 102 S. Ct. 1186, 71 L.Ed.2d 362 (1982) ("a 'facial' challenge ... means a claim that the law is 'invalid *in toto*—and therefore incapable of any valid application.'" (quoting *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S. Ct. 1209, 39 L.Ed.2d 505 (1974)). In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge "is not an attempt to invalidate the law in a discrete setting but an effort 'to leave nothing standing[.]'" *Connection Distributing Co.,* 557 F.3d at 335 (en

banc) (quoting *Warshak v. United States,* 532 F.3d 521, 528 (6th Cir.2008) (en banc)).

*Speet v. Schuette*, 726 F.3d 867, 871–72 (6th Cir. 2013).[12]

With these principles in mind, the Court turns to Plaintiff's Complaint. As noted above, Count I makes reference to "this unconstitutional law" that has been implemented in Tennessee. (Doc. No. 1 at 12). As for what exactly the allegedly unconstitutional "law" is, the Complaint does not say. The only *statute* it could possibly be is Tenn. Code Ann. § 53-11-201(f)(1)(A)-(B), which is the only statute mentioned in the Complaint. That statute (or, to be more precise, portion of a statute) provides:

> (1) Whenever, in any proceeding under this section, a claim is filed for any property seized, as provided in this section, by an owner or other person asserting the interest of the owner, the commissioner shall not allow the claim unless and until the claimant proves that the claimant:
>
> (A) Has an interest in the property, which the claimant acquired in good faith; and
>
> (B) Had at no time any knowledge or reason to believe that it was being or would be used in violation of the laws of the United States or of the state relating to narcotic drugs or marijuana.

Tenn. Code Ann. § 53-11-201(f)(1)(A)-(B). But that statute is mentioned only in a footer that is not even tied to any particular text in the Complaint. (Doc. No. 1 at 11). The Complaint makes no clear identification of this statute as a law that allegedly must be struck down in its entirety because

---

[12] In the specific context of the First Amendment, which naturally raises unique consideration, a facial challenge can succeed even if the plaintiff cannot show that there is no possible application of the law that could be constitutional. In such context, "[i]nstead of having to prove that *no* circumstances exist in which the enforcement of the statute would be constitutional, the plaintiff bears a lesser burden: to demonstrate that a substantial number of instances exist in which the law cannot be applied constitutionally." *Speet,* 726 F.3d at 872. But the First Amendment manifestly is not implicated in this case.

it (supposedly) is not capable of application in a manner that is not unconstitutional.[13] Thus, even construing the Complaint in Plaintiff's favor so as to maximize Plaintiff's chances of avoiding the *Rooker-Feldman* doctrine, Count I cannot be said to present a facial challenge to any statute.[14]

If Plaintiff is neither alleging a facial challenge to the statute nor alleging the Defendants acted unconstitutionally outside of the law in Count I, the third possibility is that Plaintiff is making an as-applied challenge to the constitutionality of Tenn. Code. Ann. § 53-11-201(f)(1)(A)-(B). This strikes the Court as the most likely possibility since much of the Complaint focuses on Plaintiff's grievance with the application and/or interpretation of the law by State and County officials. However, under this interpretation of Count I, *Rooker-Feldman* poses an obstacle for Plaintiff.

In *Durham v. Haslam*, 528 F. App'x 559 (6th Cir. 2013), the Sixth Circuit upheld the district court's determination that *Rooker-Feldman* barred the action from proceeding. In *Durham*, the plaintiff, Sherrie Durham, had been fired from her job at the Tennessee Department of Labor. *Id.* at 560. As the Sixth Circuit explained the factual background:

> [Plaintiff] appealed her discharge to the Tennessee Civil Service Commission and then to the Davidson County, Tennessee chancery court. During the course of the chancery court case, Durham moved to strike the administrative record because the State failed to file it by the date required under Tennessee law. The chancery court granted the motion, after warning Durham of the consequences that the absence of the record would have for her case, namely, affirmance of her discharge.

---

[13] Nor would any such allegation be plausible, in the Court's view; the Court sees no reason why there would not be at the very least some circumstances under which this statute could be applied constitutionally.

[14] Moreover, Plaintiff suggests in her response to County Defendant's Motion that she is not making a facial challenge. *See* Doc. No. 35 at 5-6 ("Finally, the Defendants' argument about whether Tubbs has mounted a valid facial challenge is equally beside the point. A facial challenge is one possible way to avoid Rooker Feldman. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-483 (1983). But it is hardly the only way. *Exxon*, 544 U.S. 280 (2005). Tubbs is not required to mount a facial challenge.").

After the inevitable occurred, Durham filed the present action in federal court alleging that the state violated her First and Fourteenth Amendment rights to free speech and due process, by (1) "interpret[ing] [the Tennessee Administrative Procedures Act (APA)] in such a way that courts can assess fault and blame a petitioner for pointing out that the State has failed to timely file the agency record," Compl. ¶ 27; and (2) "interpret[ing] [the Act] in such a way that the agency always wins if the agency does not prepare or file the agency record with the reviewing court," Compl. ¶ 28. Among other things, she asked the district court to vacate her discharge and reinstate her.

*Id.*[15]

Durham argued that *Rooker-Feldman* did not apply to her case because she was not directly appealing a state court judgment, did not complain of an injury from the state court, and did not ask the district court to review or reject the state court judgment. *Id.* at 562-63. Durham also argued that *Rooker-Feldman* did not apply to a "general challenge to a state statute" like hers. *Id.* at 563. The Sixth Circuit determined that Durham was not making a facial challenge to the Tennessee APA but was actually challenging the state court's interpretation of how the APA applied to her case. *Id.* at 564.

Durham's entire argument rests on her premise that it was unconstitutional for the state to dismiss her petition for judicial review where there was no administrative record to review, whereas the state courts held that it was the petitioner's burden to point out flaws in the administrative review process, which she could not do after she successfully caused the record to be stricken. This is nothing if not a challenge to the judgment of the state court that affirmed her discharge, because Durham alleges that the state court interpreted the statute and applied it to her case in an unconstitutional manner. Where the plaintiff alleges that a state court interpreted and applied a state statute to her case in an unconstitutional manner, her complaint is an as-applied constitutional challenge and is prohibited under the *Rooker–Feldman* doctrine.

*Id.* (citing *Carter*, 524 F.3d at 799).

---

[15] The brackets and the content within the brackets are set forth here as in the original. Lest there be any confusion, the Court notes that the Sixth Circuit uses "the Act" synonymously with "APA"; *i.e.*, each of these terms is shorthand for the Tennessee Administrative Procedures Act.

The Court finds *Durham* instructive in the present case. It appears to the Court that Count I actually is alleging an as-applied challenge to the statute, with the source of Plaintiff's injury being the Tennessee courts' interpretation of Tenn. Code. Ann. § 53-11-201, their refusal to hear her Fourth Amendment suppression arguments, and their affirmation of the Tennessee Department of Safety's decision to uphold the forfeiture of the money and purse. Notably, Count I includes the phrase "[a]s clarified by the Tennessee Court of Appeals," which suggests that the interpretation and application of the law by the Tennessee Court of Appeals was essential to the infliction of Plaintiff's alleged injury and supports the notion that Plaintiff is making an as-applied challenge. (Doc. No. 1 at 12). Moreover, the Complaint's Factual Background section states, "More importantly for purposes of this lawsuit, the Court of Appeals also found — for the first time ever — that [Plaintiff] was barred by state law from even asserting the Fourth Amendment in a forfeiture proceeding." (*Id.* at 10). Additionally, in her response to State Defendants' Motion, Plaintiff says that her claims "did not become known, until after the state judicial case was already at the end of the appeal," which again suggests that the source of Plaintiff's injury is the state court's interpretation of the statute. (Doc. No. 27 at 1).

A review of Plaintiff's requested relief further supports the Court's understanding that the source of Plaintiff's injury in Count I is the state court's judgment. *See Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) ("A court cannot determine the source of the injury without reference to the plaintiff's request for relief.") (quotations omitted). Plaintiff requests, "[e]quitable injunctive relief ordering Commissioner Jeff Long and the State of Tennessee to return the ill-gotten purse and the money inside." (Doc. No. 1 at 19). This relief, like the relief requested in *Durham*, cannot be granted "without overturning the judgment of the state court"; thus *Rooker-Feldman* is implicated, barring the Court from considering the claims in Count I. *See* 528 F. App'x at 564.

2. <u>Count II of Plaintiff's Complaint is barred by *Rooker-Feldman.*</u>

Count II of Plaintiff's Complaint states, "By seizing the Plaintiff's purse and her life savings without any punitive purpose, without compensation, and for public use, COMMISSIONER LONG, the STATE OF TENNESSEE, and CANNON COUNTY violated her rights as guaranteed by the Fifth Amendment." (Doc. No. 1. at 12-13). Count II also includes a footnote, which states the following, "[H]ere the Court of Appeals refused to rule on whether the property was even connected with any crimes, and held that this is standard state procedure." (*Id.* at 13).

In Count II, which asserts a Fifth Amendment Takings Clause claim, Plaintiff suggests the source of her injury is the Defendant's conduct of originally seizing the property. However, the Court believes the more accurate source of Plaintiff's injury alleged in Count II, considering the Complaint as a whole and even construed it in Plaintiff's favor as required is the upholding of the forfeiture order by Tennessee state courts. This is revealed in part by the fact that an entire section of Plaintiff's Complaint focuses on the "judicial review" of the forfeiture proceeding, whereby Plaintiff petitioned Tennessee courts to "vacate the forfeiture." (Doc. No. 1 at 9). The Court cannot allow Count II to avoid application of *Rooker-Feldman* by construing it in a manner that runs counter to the whole tenor of the Complaint.

Though it appears at points in her Complaint that Plaintiff has attempted to present her claims in such a way as to enable them to avoid the application of *Rooker-Feldman*, no artful pleading can change the reality—as revealed in other parts of her Complaint—that Plaintiff's claims are premised on an injury the source of which places her claims within the scope of *Rooker-Feldman*. Plaintiff's grievance is not solely with the Defendants for allegedly seizing her property and participating in the forfeiture proceedings, but also (and ultimately more importantly and consequentially) with the Tennessee trial court and Tennessee Court of Appeals for upholding

such forfeiture.[16] Federal case law supports this understanding. The Sixth Circuit has previously held that a Taking Clause claim was barred by *Rooker-Feldman* when the question of property ownership had been "already litigated in state court." *Roch v. Humane Society of Bedford Cnty., Tenn., Inc.*, 134 F. App'x 68, 71 (6th Cir. 2005) (finding that the ownership of animals removed from a negligence situation pursuant to a state court order could not be re-litigated in a federal court via a Takings Clause claim). Here, the question of property ownership has already been determined in state court. In its decision on Plaintiff's state court appeal, the Tennessee Court of Appeals explained,

> In his ruling and in his "Final Order," the ALJ concluded that Ms. Tubbs lacked standing because she failed to show that she had any ownership interest in the seized currency. The trial court subsequently affirmed this finding by the ALJ. Upon careful review, we conclude that the evidence preponderates in favor of the trial court's affirmance of this determination.

*Tubbs v. Long*, 610 S.W.3d 1, 13 (Tenn. Ct. App. 2020).

In a similar case, a plaintiff brought action against a city alleging a Fifth Amendment just compensation violation for the seizure (and ultimate forfeiture) of 44 horses. *See Campbell v. City of Spencer*, 682 F.3d 1278 (10th Cir. 2012). The Tenth Circuit upheld the district court's application of *Rooker-Feldman* to bar the plaintiff's claims, explaining,

> Properly understood, [plaintiff's] claim under the Fifth Amendment is a direct attack on the state court's judgment because an element of the claim is that the judgment was wrongful. To be sure, the complaint speaks in terms of actions by the

---

[16] For the *Rooker-Feldman* doctrine to be applicable to a case, it is not necessary for the state court judgment to be the sole cause of injury. Rather, the state court must be a "but for" cause of Plaintiff's injury, but not necessarily the only cause. *See generally Hake v. Simpson*, 770 F. App'x 733, 733 (6th Cir. 2019) (holding *Rooker-Feldman* barred federal review of sheriff's actions as directed by a state court judgment); *Loriz v. Connaughton*, 233 F. App'x 469, 472 (6th Cir. 2007) (finding that *Rooker-Feldman* still acted as a bar for plaintiffs' action challenging a decision of a state Zoning Department as affirmed by a state court judgment); *Abbott v. Michigan*, 474 F.3d 324, 329 (6th Cir. 2007) (finding that *Rooker-Feldman* applied to injures "ostensibly . . . caused by the actions of third parties" that were supported by a state court's decision).

defendants. . . . But the deprivation of property that was allegedly without just compensation or due process was the deprivation ordered by the state court.

*Id.* at 1284; *see also Cardelle v. Miami-Dade Cty.*, 742 F. App'x 449, 450 (11th Cir. 2018) ("Here, the *Rooker-Feldman* doctrine deprives us of subject-matter jurisdiction over [plaintiff's] claims. We can only grant the relief she is requesting by determining that the state court wrongly decided the issue of whether she had a proprietary interest in the seized funds."); *Walker v. Abraham*, 156 F. App'x 536, 537–38 (3rd Cir. 2005) (holding that the *Rooker–Feldman* doctrine deprived the court of subject-matter jurisdiction over a Section 1983 action claiming that the state forfeiture proceedings were unconstitutional); *Crowe v. Cook*, No. 1:13-CV-361, 2013 WL 3761072, at *5 n.1 (S.D. Ohio July 16, 2013) ("To the extent that plaintiff intends for this Court to review any state court forfeiture proceeding, the court is without jurisdiction under the *Rooker–Feldman* doctrine.").

Moreover, in Plaintiff's Response to State Defendants' Motion, she argues that *res judicata* is inapplicable in the present case because "the claims did not [] accrue until the end of the state court case" when the Tennessee Court of Appeals provided "clarification (or perhaps modification) of the law." (Doc No. 27 at 9) (parenthetical in original). As Plaintiff herself acknowledges, the source of injury for Count II is actually, at least in part, the Tennessee Court of Appeal's interpretation and application of state law and ultimate endorsement of the forfeiture. For these reasons, the Court lacks subject-matter jurisdiction to hear Plaintiff's Fifth Amendment claim as outlined in Count II (or her Fourteenth Amendment claim as outlined in Count I) pursuant to the *Rooker-Feldman* doctrine.

3. If *Rooker-Feldman* did not prohibit the Court from considering Counts I and II, *res judicata* would.

The Court acknowledges that the law surrounding the *Rooker-Feldman* doctrine can be quite nuanced. Unsurprisingly, State Defendants were not content to hang their hats on the sometimes fickle case law concerning the *Rooker-Feldman* doctrine, and so they alternatively argued that *res judicata* would bar the Court from considering the claims in Count I and II of Plaintiff's Complaint. Accordingly, the Court will briefly discuss the applicability of *res judicata* to Count I and Count II. As discussed below, even if *Rooker-Feldman* were inapplicable to Plaintiff's claims, the claims nevertheless would be subject to dismissal based on the doctrine of *res judicata* (also referred to as claim preclusion).

Broadly defined, *res judicata* is "the preclusion of claims that have once been litigated or could have been litigated" in a previous lawsuit. *Sutton v. Parker*, No. 3:19-cv-00005, 2019 WL 4220896, at *6 (M.D. Tenn. Sept. 5, 2019) (quoting *Hutcherson v. Lauderdale Cty., Tenn*., 326 F.3d 747, 758 n.3 (6th Cir. 2003)). "Federal courts are required to apply *res judicata* in a manner to give the same effect to the Tennessee state court judgment as would another Tennessee state court." *AT Project, LLC v. Brumfield*, No. 16-CV-01966, 2020 WL 6712170, at *3 (M.D. Tenn. Nov. 16, 2020), *appeal dismissed*, No. 20-6397, 2021 WL 2376379 (6th Cir. Mar. 25, 2021). There are four elements to establish *res judicata* under Tennessee law: "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *West v. Parker*, 783 F. App'x 506, 512 (6th Cir. 2019) (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)). Here, the parties dispute only whether the third element is satisfied; it appears undisputed (and indisputable) that the other elements are satisfied. However, it is clear to the Court that the claims contained in Count

I were fully heard by a state court, and that the claim stated in Count II could have been brought previously in the state court proceedings.

Count I asserts a claim for due process violations (via a procedure that allegedly did not allow Plaintiff to raise Fourth Amendment issues) under the Fourteenth Amendment. In her "Petition to Rehear" to the Tennessee Court of Appeals, Plaintiff argued that she had a right under the "Fourteenth and Fourth Amendments to claim violations against her property, namely the house, in order to exclude illegal evidence from being used in her forfeiture hearing." Pl.'s Pet. to Rehear, M2019-00627-COA-R3-CV, at 8 (May 8, 2020). In its denial of Plaintiff's request, the Tennessee Court of Appeals said, "We determine that the issues raised in the petition were fully argued by Ms. Tubbs in her brief, considered by this Court, and sufficiently addressed in our Opinion." Order on Pet. for Reh'g, No. M2019-00627-COA-R3-CV, at 1 (May 14, 2020). Thus, it is clear that the claims raised by Plaintiff in Count I were previously asserted and heard by the Tennessee Court of Appeals. Accordingly, *res judicata* would prohibit this Court from considering the same claims.

Count II also collides with *res judicata*. Plaintiff in Count II asserts a Fifth Amendment Takings Clause claim. Though Plaintiff never directly brought a claim under the Fifth Amendment in her state court proceedings, *res judicata* "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were *or could have been litigated in the former suit*." *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009) (emphasis added). "Tennessee courts deciding whether to apply res judicata to a second suit apply a 'transactional test,' under which '[t]wo suits . . . shall be deemed the same "cause of action" for purposes of res judicata where they arise out of the same transaction or a series of connected transactions.'" *Sutton*, 2019 WL 4220896, at *8) (quoting *Creech*, 281 S.W.3d at 380–81). And a

transaction is defined as "a natural grouping or common nucleus of operative facts." *Creech*, 281 S.W.3d at 380 (quoting Restatement (Second) of Judgments § 24(1)).

Here, it is clear that the same "common nucleus of operative facts" underly Plaintiff's claims in state court and Plaintiff's Fifth Amendment claim in federal court. Plaintiff argues that "res judicata cannot apply . . . because the claims did not even accrue until the end of the state court case." However, if this argument were valid then it would be just that much clearer that Plaintiff's injury in Count II is sourced, in part, from the Tennessee Court of Appeals judgment such that *Rooker-Feldman* would again come into play.

Plaintiff additionally argues that she could not have brought a Fifth Amendment claim in the state proceedings because there is "no clear mechanism" to combine a tort lawsuit with judicial review in Tennessee state court. (Doc. No. 27 at 11). In the context of judicial review of a state agency decision, a claim for a constitutional violation—like Plaintiff's Fifth Amendment Takings Clause claim—can come in the form of a defense to the agency's action or in a separate affirmative claim (against the agency or state actors associated with the agency). It is clear Plaintiff could have raised her Fifth Amendment claim as a defense to the forfeiture proceedings; Tennessee courts have previously allowed individuals to raise constitutionality challenges in judicial reviews of administrative forfeiture decisions on many occasions. *See Fisher v. Tennessee Dep't of Safety & Homeland Sec.*, No. M201802041COAR3CV, 2020 WL 1932487, at *2 (Tenn. Ct. App. Apr. 21, 2020) (involving a case where an individual whose car had been subjected to forfeiture by the Tennessee Dept. of Safety petitioned a Tennessee chancery court for judicial review, alleging due process and Eighth Amendment violations); *Jones v. Greene*, 946 S.W.2d 817, 820 (Tenn. Ct. App. 1996) ("Mr. Jones filed a petition for review in the Chancery Court for Davidson County alleging that the forfeiture statute was unconstitutional in several particulars and that the

Commissioner's decision was not supported by substantial evidence."). It is less clear that Plaintiff could have brought her Fifth Amendment claim as a distinct affirmative claim joined to her judicial review request. Generally, an "original action" should not be joined with an appeal (like a judicial review). *See Poursaied v. Tennessee Bd. of Nursing*, No. M202001235COAR3CV, 2021 WL 4784998, at *5 (Tenn. Ct. App. Oct. 14, 2021). However, the Tennessee Supreme Court noted that claims for relief under 42 U.S.C. § 1983 can be joined to a judicial review, as long as the plaintiff "did not seek remedies under Section 1983 that were inconsistent with those in [the plaintiff's] petition for judicial review." *Wimley v. Rudolph*, 931 S.W.2d 513, 515 (Tenn. 1996). It appears to the Court that Plaintiff's Complaint requests equitable relief under Section 1983 via the "return [of] the ill-gotten purse and the money inside," as well as "reasonable attorney's fees, per 42 U.S.C. § 1988."[17] (Doc. No. 1 at 19). Neither of those requests for relief would be inconsistent with her petition for judicial review, which also sought the return of Plaintiff's allegedly improperly forfeited property. Thus, Plaintiff's claim for a Fifth Amendment Takings Clause violation could have been raised in her state proceeding, either as a defense to the forfeiture or as an independent claim requesting equitable relief. As Plaintiff could have raised her Fifth Amendment claim in her state proceedings and the claim originates from the "same transaction" as her state court proceedings, *res judicata* forbids this Court from allowing Plaintiff to re-litigate the claim in federal court.

---

[17] 42 U.S.C. § 1988 is the statutory provision granting reasonable attorney's fees "to the prevailing party in a federal civil rights act," including in cases brought under Section 1983. *Murrell v. Bd. of Admin. City of Memphis Pension & Ret. Sys.*, No. W202000187COAR3CV, 2021 WL 1233500, at *4 (Tenn. Ct. App. Mar. 31, 2021) (citing to *Wimley*, 931 S.W.2d at 517 for the proposition that a plaintiff's request for reasonable attorney's fees can be coupled with judicial review).

B. <u>Whether Plaintiff's remaining state-law claims should be dismissed</u>

As noted above, Plaintiff brings additional state-law claims for trespass and conversion under Tennessee common law in Counts III and IV of her Complaint. These additional claims are only against select members of County Defendants. Though County Defendants' Motion for Judgment on the Pleadings under 12(c) is not clearly intended to be only a partial motion, it fails to mention Count III or IV at all. This is likely because, as previously discussed, County Defendants copied word for word State Defendants' *Rooker-Feldman* argument without adding any substantive arguments of their own. However, County Defendants apparently failed to realize State Defendants only needed to deal with Counts I and II as no State Defendants were named in the other two counts. By not adjusting their Motion for Judgment on the Pleadings to include a discussion of Counts III and IV, County Defendants have impeded the Court from considering whether those counts should be dismissed.

Nonetheless, a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also Ford v. Frame*, 3 F. App'x 316, 318 (6th Cir. 2001) ("[D]istrict courts possess broad discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed."). The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."). Plaintiff does not assert any factual allegations

that would suggest diversity jurisdiction as a possible basis for the Court to exercise subject-matter jurisdiction over the state-law claims. Because the Court has determined that State Defendants' motion should be granted as to Plaintiff's only federal claims (the Section 1983 claims contained in Counts I and II), the Court can decline to exercise supplemental jurisdiction over Plaintiff's state-law claims (contained in Counts III and IV); seeing no reason not to exercise such discretion consistent with federal courts' usual practice, the Court will dismiss the state-law claims without prejudice. Plaintiff may seek to refile them in a Tennessee state court.

## CONCLUSION

For the reasons discussed herein, the Court will grant in whole State Defendants' Motion to Dismiss. County Defendants' Motion for Judgment on the Pleadings will be denied as moot. Accordingly, Plaintiff's Section 1983 claims (Counts I and II) will be **DISMISSED without prejudice**; and, in the Court's discretion, Plaintiff's state-law claims (Counts III and IV) will be **DISMISSED without prejudice**, so that Plaintiff may file them in Tennessee state court if she wishes.[18]

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[18] The Court expresses no opinion as to the extent to which such claims should or would be successful if brought in state court.